**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rene Ortiz, | No. CV-25-02505-PHX-SHD |
| Petitioner, | **ORDER** |
| v. | |
| Adrian Fontes, et al., | |
| Respondents. | |

Pending before the Court are Petitioner Rene Ortiz's petition for writ of mandamus, (Doc. 1); application to proceed *in forma pauperis* ("IFP"), (Doc. 3); motion to retain the presiding judge, (Doc. 11); motion to transfer to the U.S. Supreme Court, (Doc. 12); and motion for issuance of the summons, (Doc. 13).

In short summary, Ortiz seeks mandamus relief against Arizona's Secretary of State—Adrian Fontes—in his official capacity; the Chairman of the Citizens Clean Elections Commission, Mark Kimble; and the Citizens Clean Elections Commission (collectively, "Respondents"). (*See* Doc. 1 at 1–2.) Ortiz alleges he submitted a Statement of Intent to run for Congress but has not been placed on the ballot for the September 2025 Special Election. (*See id.* at 3, 5.) He stated in his Statement of Intent that he did "not intend to pay any filing fees or gather signatures for placement on the ballot" and argues that such requirements violate his constitutional rights. (*See id.* at 4–5, 11; *see also id.* at 19 (making same statement).) Finally, Ortiz requests an order compelling Respondents to, among other things, place his name on the Special Election ballot, "[a]nnounce [his]

candidacy to the Public via all official State communication platforms," and provide him "equal access to voter databases and campaign infrastructure or assistance extended to other candidates." (*Id.* at 5 (emphasis omitted).) For the following reasons, Ortiz's petition and pending motions are denied.

## I.     IFP APPLICATION

Ortiz moved to proceed IFP in a narrative form without including financial information required by statute. (*See* Docs. 3, 4.) *See* 28 U.S.C. § 1915(a)(1) (requiring IFP applicants to submit an "affidavit that includes a statement of *all assets* such [person] possesses that the person is unable to pay such fees or give security therefor" (emphasis added)). As another Judge in this District has determined, Ortiz has "previously been provided with the correct form to use." *See Ortiz v. U.S. Dep't of Veterans Affs.*, 2025 WL 2173508, at *2 (D. Ariz. 2025). Because Ortiz's financial status cannot be determined without the required information about his assets, the IFP application is denied.

Moreover, to the extent Ortiz argues that being required to pay the filing fee violates his constitutional rights, his argument is foreclosed. Filing fees are prescribed by Congress, *see* 28 U.S.C. § 1914, and "have been challenged on constitutional grounds before, without success." *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002). The "right of access to federal courts is not a free-floating right," and "Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them." *Roller v. Gunn*, 107 F.3d 227, 231 (4th Cir. 1997). "The correct principle is that reasonable costs may be imposed on persons who want to sue." *Id.* at 232 (quoting *Lumbert v. Ill. Dep't of Corrs.*, 827 F.2d 257, 259 (7th Cir. 1987)); *see also Lumbert*, 827 F.2d at 259 ("[I]t is not true that placing any cost on the filing of litigation violates the Constitution. Otherwise all filing fees would be unconstitutional, which of course they are not.").

It is worth noting that Ortiz could potentially have avoided the filing fee if he submitted a proper IFP application establishing that he is indigent. But even "IFP status is not constitutionally mandated and can be extended or limited by Congress," *Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir. 1999), which underscores that imposing filing fees

against an indigent plaintiff is permissible.

Moreover, in "the civil context . . . the Constitution only requires waiver of filing fees in a narrow category of cases where the litigant has a fundamental interest at stake," such as the termination of parental rights. *Id.* (quotation marks omitted). "But there is neither any fundamental right to run for public office, nor any right to use the ballot itself to send a particularized message." *Lindsay v. Bowen*, 750 F.3d 1061, 1063–64 (9th Cir. 2014) (citation and quotation marks omitted). And Ortiz's case is not one "involving state controls or intrusions on family relationships" in which the Supreme Court has found fees unconstitutional. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996); *see also Roller*, 107 F.3d at 227, 232 n.1 ("[T]he [Supreme] Court has made clear that 'in the mine run of cases' which do not involve 'state controls or intrusions on family relationships' filing fees may be required." (quoting *M.L.B.*, 519 U.S. at 116)).

Ortiz's citation to *Murdock v. Pennsylvania*, 319 U.S. 105 (1943), is unpersuasive, as that case concerned the constitutionality of a license tax imposed against religious individuals "as a condition to the pursuit" of evangelism through their distribution of "religious literature and through personal visitations," *id.* at 108–10. *See, e.g.*, *Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 21, 24 & n.11 (1989) (plurality opinion) (disavowing "unnecessarily sweeping statements" in *Murdock*). Ortiz does not explain why the *Murdock* decision prohibits courts from imposing a filing fee.

Finally, Ortiz requests in his application that his case be directly assigned to Judge Tuchi. (Doc. 3 at 2.) This request is denied. *See Cluck v. Vail*, 2010 WL 1734853, at *1 (E.D. Wash. 2010) ("No party may direct which Judge will or will not hear her case."), *report and recommendation adopted*, 2010 WL 1734851 (E.D. Wash. 2010).

## II.     SCREENING THE PETITION

Additionally, even if the IFP application could be cured, this case must be dismissed. The "common-law writ of mandamus has been abolished in the district courts." *Plaskett v. Wormuth*, 18 F.4th 1072, 1081 (9th Cir. 2021) (citing Fed. R. Civ. P. 81(b)). The "effect of the Rule is to substitute for the writ a motion or complaint." *Cooke v. Town*

- 3 -

*of Colorado City*, 2013 WL 11238690, at *5 (D. Ariz. 2013) (citation omitted). But even construing Ortiz's petition as a complaint, *cf. Glass v. California*, 2025 WL 869814, at *4 (E.D. Cal. 2025) (noting that *pro se* prisoner mandamus petitions against state officials can sometimes be construed as civil rights actions), he must still "state facts constituting grounds for the extraordinary remedy, show [his] legal right or interest . . . in having the duty or act compelled, and show the nature of defendant's duty and his or her failure or refusal to perform it as required by law." *Cooke*, 2013 WL 11238690, at *5 (citation omitted). Further, Ortiz must "carry the burden of proving a clear and indisputable right to it[s] issuance and must have no other adequate means to attain the relief desired." *Id.* (citation modified).

Ortiz has not met his burden of showing that any such relief, however construed, is warranted. As an initial matter, Arizona does not require candidates running for political office to pay a fee to appear on the ballot. Ariz. Const. art. VII, § 14 ("No fee shall ever be required in order to have the name of any candidate placed on the official ballot for any election or primary."); *Adams v. Bolin*, 271 P.2d 472, 474 (Ariz. 1954) ("To have one's name printed on the ballot for a primary election, some states require simple filing by the candidate, others require a fee, while many, *including Arizona, require nominating petitions* signed by a certain number of qualified electors." (emphasis added)). Accordingly, Ortiz's argument that a filing fee requirement violates his constitutional rights will not be addressed.

As for Ortiz's argument about Arizona's signature-gathering requirement, he does not cite applicable authority providing that he has a legal right—or that state officials would be required by law—to have his name put on the ballot in these circumstances. "The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983). "[R]equiring independent candidates to evidence a significant modicum of support is not unconstitutional," and "[d]emanding

signatures equal in number to 3% or 5% of the vote in the last election is not invalid on its face." *Am. Party of Tex. v. White*, 415 U.S. 767, 789 (1974).

According to the Secretary of State, the minimum number of signatures that an independent candidate or candidate "seeking to run without a recognized political party designation" must gather to appear on the September 2025 Special General Election ballot is 4,431, out of 147,690 voters. *See* Ariz. Sec'y of State, *2025 Congressional District 7 Special Primary and Special General Election Information Important Dates* (last visited Sept. 16, 2025), https://azsos.gov/sites/default/files/docs/2025-Special-Election-Schedule.pdf [https://perma.cc/5BWH-TXHC]; Ariz. Sec'y of State, *Running for Office: Running for Federal Office* (last visited Sept. 16, 2025), https://azsos.gov/elections/candidates/running-office [https://perma.cc/7BFS-ZFLH]; *see also Nader v. Brewer*, 531 F.3d 1028, 1031 (9th Cir. 2008) (noting that a "person who is not a member of a recognized political party [in Arizona] may gain a place on the ballot by filing nomination petitions containing a prescribed number of signatures": "3% of the registered voters in the political subdivision for which the candidate is nominated, who are not members of recognized political parties"). This amounts to 3%, which is within the percentage of signatures that the Supreme Court has held constitutionally permissible. *See Am. Party of Tex.*, 415 U.S. at 789; *Ariz. Libertarian Party v. Reagan*, 2017 WL 2929459, at *10 (D. Ariz. 2017) ("The Supreme Court has held that states may require candidates to show support from up to 5% of the general electorate.").

Ortiz has therefore not met his burden of showing that he has "a clear and indisputable right" to his requested relief. *Cooke*, 2013 WL 11238690, at *5 (citation omitted). His petition is thus denied. Because no allegation of different facts would save Ortiz's petition, amendment would be futile. *See Grondal v. United States*, 37 F.4th 610, 621 (9th Cir. 2022) (affirming denial of leave to amend petition for writ of mandamus where leave to amend would "be pointless").

### III. MOTION TO TRANSFER

Ortiz's motion to transfer his case to the U.S. Supreme Court is denied because such

relief is not proper. Ortiz's cited statute—28 U.S.C. § 1254, (Doc. 12 at 1)—is inapplicable because it concerns "[c]ases in the courts of appeals." 28 U.S.C. § 1254. Rules 5.1(c) and 27(a) are likewise inapplicable. (*See* Doc. 12 at 1 (citing rules).)

In light of these conclusions, Ortiz's remaining motions are denied as moot.

Accordingly,

**IT IS ORDERED** that the petition for writ of mandamus (Doc. 1) is **denied**.

**IT IS FURTHER ORDERED** that the IFP application (Doc. 3) is **denied**.

**IT IS FURTHER ORDERED** that the motion to retain the presiding judge (Doc. 11) is **denied as moot**.

**IT IS FURTHER ORDERED** that the motion to transfer to the U.S. Supreme Court (Doc. 12) is **denied**.

**IT IS FURTHER ORDERED** that the motion for issuance of the summons is **denied as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 16th day of September, 2025.

_____
Honorable Sharad H. Desai
United States District Judge